In re Estate of Katherine E. Swift, Deceased, D. L. Harmon, Executor, Appellant, v. Ray Swift, Appellee.

Gen. No. 35,685.

Opinion filed June 28, 1932. Rehearing denied July 11, 1932.

M. D. DOLAN, for appellant; B. A. CUMMINS, of counsel.

DANAHER & GARRIOTT, for appellee; JAMES J. DANA-HER, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal by the executor of the estate of Katherine E. Swift, deceased, from a judgment allowing appellee's claim for $5,250 against the estate. The case was heard by the court, without a jury.

The claim of the appellee was originally filed in the probate court and upon a hearing in that court was allowed. The executor appealed and the case was tried *de novo* in the circuit court, by the court, without a jury. The claim was again allowed and the appellant appealed to this court. (*In re Estate of Swift v. Swift* [Abst.], 259 Ill. App. 657.) We reversed the judgment and remanded the cause for a new trial upon the ground that the evidence for the appellee failed to make out a prima facie case. *The appellant, in that hearing, as in the present one, offered no evidence.*

After the cause was remanded to the circuit court the claimant filed an amended statement of claim, alleging, in substance, "that while indebted to him in the sum of $5,850, his brother, Joseph Swift, during his lifetime transferred all his property directly to his wife, Katherine Swift, deceased, herein; that said transfer was a fraud upon his rights as a creditor; that he notified said Katherine Swift that he would take the necessary action to have this transfer set aside as a fraud upon his rights as such creditor; that the said Katherine Swift agreed to pay him the amount of his claim if he would permit the transfer to go through; that he accepted the offer, took no action to disturb her possession or enjoyment of said property, and that subsequently she made three payments to him, in accordance with this agreement, of $200 each, and that at the time of her death there was a balance due to him of $5,250, for which he filed his claim."

The appellant thus states his contentions: ''(1) That the evidence on the second trial with respect to Mrs. Swift's alleged promise is substantially the same as on the first trial, and that the prior ruling of this Court that a prima facie case was not made out is *res judicata;* (2) that the evidence is insufficient to establish a legal liability; and (3) that the evidence, if it shows anything, shows that Mrs. Swift's promise was to pay Joseph Swift's debt and was made 'at the time Joe transferred his property,' which was more than five years before her death, and that therefore the Statutes of Frauds and Limitations are good defenses; and (4) that the Court's rulings on evidence were erroneous and prejudicial to appellant.''

As to point (1), it appears that after we reversed and remanded the cause the appellee filed an amended statement of claim substantially different from the original one, and upon the last trial new and material proof was submitted in behalf of the appellee. In our former opinion we stated that ''a careful examination of the evidence discloses that the claimant offered no proof that on or about March 6, 1923, he was an heir of Joseph A. Swift, or that Joseph A. Swift had any real estate in which claimant had any rights, or that claimant waived any interest in the property conveyed by Joseph A. Swift to Katherine E. Swift, or that he had any interest in said property.'' An examination of the evidence in the present record discloses that the appellee, upon the last trial, offered proof that made out a clear prima facie case.

As to point (2), the appellant argues that ''an examination of the evidence will show that there is no competent or sufficient evidence to show that Joseph A. Swift owed Ray Swift $5,850, or any other sum; or that Ray Swift loaned or was ever able to loan $5,850 to Joseph A. Swift; or that Joseph A. Swift had any real estate in which appellee had any rights,

or that appellee waived any interest in any property conveyed by Joseph A. Swift to Katherine E. Swift, or that he had any interest in any such property; or that he had or waived any 'rights as heir' of Joseph A. Swift; or waived any rights of the reasonable value of $5,250, or that Mrs. Swift ever agreed to pay him any specified amount; or that he had waived or forbore any right or thing of value, or that she made any payment on account." The evidence of William Begley and John J. Phelan makes out a clear prima facie case that Joseph A. Swift owed the appellee the amount of the claim. The appellant argues that there is not sufficient competent evidence to show that Joseph Swift had any real estate in which appellee had any rights or that the appellee waived any interest in any property conveyed by Joseph Swift to Katherine Swift, or that he had any interest in any such property. The appellee introduced evidence which shows that the real estate described in the inventory of the estate of Katherine E. Swift was conveyed to her by quitclaim deed from Joseph Swift; that Joseph Swift, prior to the time of making the quitclaim deed, had signed certain bonds as surety and that he had been sued, in the municipal court, upon one of the bonds and judgment had been entered against him, and that the bailiff of that court made a return that he could find no property upon which the execution could be levied or judgment satisfied. The evidence further proves that the appellee was a creditor, to the amount of the claim in this cause, of Joseph Swift, his brother, at the time the transfer of the property was made and that Swift made the conveyance to his wife, Katherine, to hinder and delay creditors. This evidence was introduced for the first time on the last trial and was, therefore, not before us when we considered the former appeal. In our former opinion we stated, as one of the reasons for reversing and remanding the judgment, that "Mrs.

Swift was apparently a woman of property." In the last trial there was introduced the inventory filed in her estate, which shows that she died leaving a personal estate of less than $290 and that the only real estate she possessed was the property conveyed to her by Joseph Swift to hinder and delay his creditors, which appellee claims he permitted her to retain because of the agreement stated in the amended statement of claim. When Joseph Swift became a surety upon the appeal bond in the case of *Barber v. Vander Ploeg* he made oath that the fair, market value of the property in question was $30,000, subject to a $6,000 mortgage. From the testimony of William Begley and John J. Phelan it clearly appears that Joseph Swift acknowledged that he was indebted to the appellee in the amount of his claim and that he made the quitclaim deed to his wife of the property in question because he was having trouble about the bond he had signed, and that to avoid trouble about the bond and "to protect himself and his wife" he made the transfer. It further appears from their testimony that Swift stated that the appellant "was the only real pal he had" and had "saved him (Joseph Swift) when he was sinking," and that he did not know how the appellee would take the matter of the transferring of the property to his wife, as he still owed the appellee $5,850. It also appears in evidence that the deceased, Mrs. Swift, stated that she had a talk with the appellee about a week or ten days after her husband's death and that she then told him that she would pay him the money her husband owed him, because the property was transferred to her *in spite of the objection of appellee to the transfer,* and that she had agreed with appellee to pay the claim in question if he would agree to allow the transfer to stand. There is further testimony that she admitted that her husband owed the appellee the amount of the claim and that she promised to pay it

if he did not make any trouble; that she said to the appellee: "I suppose you could make trouble if you want to about this bond, I know you could make trouble, Ray, about this bond," or about this deed; "Ray, if you don't make trouble for me I shall certainly pay the debt." The appellant insists that the evidence, at most, merely shows an agreement to forbear from making trouble, and contends that such an agreement is without consideration. In support of this contention appellant cites *Vehon v. Vehon*, 70 Ill. App. 40, 41; *Funk v. Hossack*, 129 Ill. App. 421, and *Good v. Krause*, 215 Ill. App. 333. In the first of these cases the court held that fear of trouble, where there is no evidence to show that the plaintiff had any right to make trouble, cannot be molded into a consideration for a note. In the second case the court stated (p. 423): "Appellees contend that sufficient consideration is shown by the promise to refrain from putting appellant's tenants into bankruptcy, and by the promise to be easy on the tenants on their bill for binding twine that fall. As to the promise not to put appellant's tenants into bankruptcy, we do not regard this a sufficient consideration, for the reason that they were farmers and could not be forced into involuntary bankruptcy. As the consideration must have some value and reality, the assumption of a supposed danger or liability which has no foundation in law or in fact is not a valuable or sufficient consideration. 1 Parsons on Contracts, 437. Appellees surrendered nothing of value, for they had no ground to put appellant's tenants in bankruptcy, as they were farmers and could not be forced into involuntary bankruptcy, and so in their promise not to do so, they did not forego any privilege or abandon any right. *Bates v. Sandy*, 27 Ill. App. 552. Fear of trouble with the payee of a note, where there is no evidence to show that such payee had any right to make trouble, cannot be moulded into

a consideration. *Heaps v. Dunham,* 95 Ill. 583; *Vehon v. Vehon,* 70 Ill. App. 40.'' We are satisfied, after a careful examination of the proof, that it sufficiently appears that the appellee had an agreement with the deceased by which he waived his right to have the conveyance to her set aside and she promised, in consideration of her agreement, to pay him the amount due him from Joseph Swift. The argument of the appellant that the evidence does not show that the appellee waived any interest in the property conveyed by Joseph Swift to Katherine Swift is without merit. Under the undisputed evidence Joseph Swift was indebted to the appellee in the amount of his claim, and being so indebted, and over the objection of the appellee, he conveyed the property in question to his wife for the purpose of hindering and delaying creditors. Under the statute, ch. 59, par. 4, Cahill's Ill. Rev. St., the conveyance was void against creditors. Mrs. Swift had legal title to a piece of real estate, valued at $30,000, which had been conveyed to her by her husband, in fraud of the appellee's rights as a creditor of Joseph Swift, and the appellee had an undoubted right to have the transfer set aside. To avoid a setting aside of the conveyance and the expense and trouble of litigation connected with such a proceeding, Mrs. Swift agreed to pay the amount due the appellee from Joseph Swift, and it will be noted that she thereafter made payments in connection with the same. His agreement with the deceased to waive this right was a sufficient consideration for her to agree to pay the appellee the amount of his claim. The appellant contends that if the appellee agreed to allow a fraudulent transfer to be made he would be a party to the fraud and would not have the right to set the transfer aside. It is a sufficient answer to this contention to say that the trial court was warranted in finding that the appellee objected to the transfer.

The appellant contends that "the alleged promise was a collateral promise to answer for the debt of another," and therefore "the Statute of Frauds was a good defense to the claim." It is a sufficient answer to this contention to say that the promise of Mrs. Swift was in the nature of an original undertaking whereby she agreed to pay the debt of her husband upon the agreement of the appellee that he would not commence legal proceedings to set aside the conveyance to her. Such a promise need not necessarily be in writing. (See *Wilson v. Bevans,* 58 Ill. 232; *Reid, Murdoch & Co. v. The Northern Lumber Co.,* 146 Ill. App. 371.)

The appellant contends that "the claim was barred by the Statute of Limitations. The promise, if any, was made more than five years before Mrs. Swift died. No payment was shown to toll the running of the statute." We find no merit in this contention. The evidence shows that Mrs. Swift, ten days after the death of her husband, March 6, 1923, acknowledged the obligation and promised the appellee to pay it, and that she made a payment of $200 on account of the same in February, 1924, which was less than three years before she died. Mrs. Swift told McFadden, a witness, when she borrowed $200 from him, that she was borrowing it for the purpose of making a part payment on her indebtedness to the appellee of $5,800. McFadden further testified that he gave Mrs. Swift a check for the $200 and that the indorsements upon the same showed that the appellee had received it. In his reply brief the appellant attempts to raise a new question as to the statute of limitations, not raised in the lower court and not raised in this court in the original brief, and under the rules we need pay no attention to it. The appellant contends that "the court erred in denying Proposition of Law III." Thirteen propositions of law were tendered to the court by appellant, eleven of which were given; two, numbers one and three, were

refused. The appellant makes no complaint that the court erred in refusing proposition of law number one, which held that "the Court holds, as a matter of law, that under the law and evidence the judgment in this case should be for the defendant and against the claimant." We do not think the trial court erred in marking proposition of law number three refused, as it was not applicable to the facts of the case. The proposition assumed a party "making no effort to collect it (the debt) until the Statute of Limitations can be pleaded in bar of the action." In the instant case the appellee made a number of efforts to collect the debt before the statute had run. Moreover, Mrs. Swift had made a payment on account of the debt before the statute had run. The proposition further assumes a case where the identity, character and amount of the debt sued upon could only be ascertained by implication or presumption. In the instant case the identity, character and amount of the debt sued upon were clearly established by the proof.

Appellant next contends that "the Court erred in his rulings on evidence." We have carefully considered the various points urged in support of this contention and find them without substantial merit. The appellant contends that the court erred in admitting appellee's notebook and argues that it was error to admit the same because the suit was not based on a book account and the appellee's notebook was not a book of accounts but a mere private memorandum. Upon the trial the sole ground urged in support of the objection to the admission of the book was that it was a self-serving statement. It is unnecessary to cite authorities in support of the well known rule that the statement of one or more specific grounds of objection to the introduction of evidence is a waiver of all other grounds of objection. The appellant contends that "the Court erred in permitting Mr. Begley and Mr.

Phelan to testify to their conversations with Joseph Swift," on the ground that Mrs. Swift was not present at the time of the alleged conversations and that declarations of a grantor made after he has parted with his title are not admissible against the grantee or other persons claiming under his grant. Upon the trial the objection raised when the witness Begley was called upon to testify as to the statements was that "it is incompetent and immaterial." When the witness Phelan was asked to give the conversation he had with Joseph Swift regarding any indebtedness between himself and Ray Swift, the abstract shows, in print, the following: "Mr. Dolan: I object to leading." Following this, in handwriting, appears the following: "It is hearsay, inadmissible." Upon referring to the record we find that the objection originally read as follows: "Mr. Dolan: Just a minute, I will object to leading the witness, your Honor." On the same line, but out of alignment and in smaller type, appears the following: "It is hearsay, inadmissible." After an examination of the record we feel constrained to say that it would appear as though the words, "It is hearsay, inadmissible," were added to the bill of exceptions after the abstract had been printed. But assuming that they were not, it is evident that the contention now raised by the appellant, that the alleged statements of Swift amount to declarations of a grantor after conveyance and are therefore inadmissible to impeach his title, was not made or raised in the trial court, and that the appellant, under the record made in the trial court, is not in a position to now raise this contention. The appellant finally contends that "the Court erred in admitting in evidence the schedule, bond, and copies of the Municipal Court proceeding," and argues, in support of this contention, that Mrs. Swift "was not shown to have anything to do with these matters, and they were *res inter alios*

*acta* and inadmissible against her and her estate.''
No such objection was made or suggested at the time
of the introduction of the evidence and the appellant
will not be heard to make it for the first time in this
court. In conclusion, as to the instant contention, we
may say that the case was tried by the court, and there
is sufficient evidence in the case, to which the appellant
raised no question as to competency, to make out a
prima facie case for the appellee.

The appellee was a brother of Joseph Swift. In the
will of Mrs. Swift, after providing for the payment of
a certain debt to Dr. William J. Seigler, she gives the
balance of her property to her cousin, John Dunlap.
The appellant, while unable to offer any evidence
against the claim of appellee, has strenuously and bit-
terly contested it for a number of years. Whatever
may be the feeling of the beneficiary under the will of
Mrs. Swift against the appellee, it is undisputed in
this record that Mr. Swift regarded him highly and
gave expression to his feeling, of appreciation of the
aid that the appellee had given him at a time when it
appeared that Swift ''was about to sink'' under his
troubles. Mrs. Swift seems to have entertained like
feelings towards the appellee. Three judges have
passed upon this claim and all allowed it, and it would
seem as though there should be an end of this con-
troversy. See *Norkevich v. Atchison, T. & S. Fe Ry.
Co.*, 263 Ill. App. 1, wherein the effect of three verdicts
in favor of the same party is discussed at length. The
findings by the three judges should certainly be given
as much weight as three verdicts.

The judgment of the circuit court is affirmed.

*Affirmed.*

Kerner, P. J., and Gridley, J., concur.