### Elsie Plewe, Appellee, v. Chicago Motor Coach Company, Appellant.

**Gen. No. 37,900.**

Opinion filed December 27, 1935. Rehearing denied January 7, 1936.

WILLIAM C. McHENRY and ARTHUR J. DONOVAN, both of Chicago, for appellant; SAMUELS, GREENBERG, WOLFE & SOLOMON, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court for review upon an appeal by the defendant from a judgment of $3,000 entered by the court upon the verdict of a jury. The judgment appealed from is based upon an action for personal injuries sustained by the plaintiff on the afternoon of October 12, 1932, by reason of the negligent operation of defendant's motor coach in turning from State street into Randolph street, in Chicago.

Plaintiff's declaration is in two counts. The first alleges general negligence in the operation of the bus by the defendant's agent, and the second alleges that as the motor bus approached the plaintiff the defendant failed to give reasonable warning of its approach and failed to use every reasonable precaution to avoid injuring the plaintiff.

The evidence is not disputed that the plaintiff was crossing Randolph street on the east cross-walk of State street early in the afternoon of October 12, 1932; that as she was walking on the east cross-walk the defendant's motor bus was making a right-hand turn from State street into Randolph street at the southeast corner of the intersection to proceed east. The coach at that time was moving at the rate of 5 or 6 miles an hour; that at the time the plaintiff was walk-

ing on the cross-walk she passed in front of the bus. The facts are disputed as to just how and when the plaintiff was injured.

The motor bus was 28 feet long, and in turning, the motor driver made a turn to the east, and at that time the front of the bus extended into Randolph street 7 or 8 feet, and the rear was near the curb at the intersection. The driver saw the plaintiff when she passed, together with several other persons who were walking. The accident occurred in the heart of the business district of Chicago, and at the time of the accident, between one and two o'clock in the afternoon, the thoroughfare was congested.

Plaintiff's evidence is to the effect that when she passed the front of the bus and was within a few feet of the curb she was struck in the back by the bus and thrown forward on her hands and knees and that the right rear wheel passed over and injured her left foot. Several witnesses testified that she, the plaintiff, was thrown on her hands and knees.

Defendant's theory is that it is not a matter of importance what caused the plaintiff to fall, since, in any event, the evidential facts show that such fall was not due to negligence on the part of the driver of the coach and that without evidence showing negligence there can be no recovery by the plaintiff. However, the motor driver did see the plaintiff pass in front of the motor coach, and it is a fact that the driver knew or should have known that if the turn made at this intersection is not wide enough the rear of the coach will come close to the curb. The motor driver cannot assume, in making the turn, that his only duty is to look ahead. At that time he had notice and knew that the plaintiff, together with other persons, was passing in front of the coach, and it was his duty to drive so that there would be proper clearance between the bus and the curb, to permit the plaintiff to reach the curb in

safety. It was his duty in properly driving the bus to avoid injury to any person lawfully on the street at the time and under the circumstances.

We cite with approval what was said by Berry in the Sixth Edition on the subject of automobiles, Vol. 1, sec. 221, wherein the author said:

"Reasonable care requires greater caution on the part of motorists at street corners and intersections and on the more thronged streets of a city than on the less obstructed in the open or suburban parts. It is the duty of a driver of a vehicle when turning a street corner to give people who are crossing the street some opportunity of escape from his vehicle, because the turning of the corner is often unexpected, and unless care is exercised pedestrians are liable to be injured, and to this end he should have his car under complete control." The author in support of his statement included among the cases cited *Grier v. Samuel*, 4 Boyce (27 Del.) 106, 86 Atl. 209, wherein the court said:

"It is the duty of the person operating an automobile, or any other vehicle, upon the public streets of a city to use ordinary care in its operation, to move at a reasonable rate of speed, and cause it to slow up or to stop if need be, where danger is imminent and could, by the exercise of reasonable care, be seen or known in time to avoid accident. Greater care is required at street crossings and in the more thronged streets of a city than in the less obstructed streets in the open or suburban parts."

The defendant further contends that the duty of the driver of the coach was only to keep a proper lookout ahead so as to avoid collisions with other vehicles or with pedestrians passing in front of the motor coach; that it is not the driver's duty to watch the rear of the motor coach being driven by him.

In the instant case the driver had knowledge of persons passing in front of his bus while he was making

the turn, and also that in making the turn unless a wide turn was made, by reason of the length of the motor bus, persons using the cross-walk would be caught at the curb line.

It is a matter of general knowledge that motor cars have installed therein rear view mirrors to enable the driver to see conditions at the rear of the motor car. The driver in this case evidently assumed that he was clear of the curb and proceeded until he was stopped. The facts and circumstances in each case must be considered in order to determine whether there was negligence in the driving of the car.

Complaint is made as to the size of the verdict. Plaintiff received services of the hospital, where she remained 17 days. After 15 days in the hospital a cast was placed on her injured foot, which remained in place three weeks.

Upon the trial the plaintiff still suffered pain in the instep and big toe of her left foot. She cannot move her toes either forward or backward. At times the ankle swells, and while plaintiff wears a size six shoe on her right foot, because of the injury she is obliged to wear a size eight on her left foot.

X-rays were taken and read by a doctor qualified to interpret the pictures. The doctor testified, in substance, that there was a fracture of the fifth toe of the left foot. The X-ray also shows a spicule of bone about three-quarters of an inch long and one-sixth of an inch wide at the lower edge of the cuboid bone, which is one of the seven bones of the foot which form the arch. The function of the cuboid bone is to form a joint with the others, the fourth and fifth toes, as well as with the external cunei bone and the navicular bone, which together form the arch of the foot. The cuboid bone supplies attachment, and the area of insertion of muscles, ligaments and affects the strength of the arch of the foot. This particular spicule of bone

is in direct line or path of the body weight bearing line, and may interfere with the body weight bearing surface of the affected foot.

The evidence tends to indicate a permanent injury, and this being a question for the jury, we are not impressed by the contention of the defendant that the damages are excessive or that the verdict in this respect is contrary to the weight of the evidence.

The defendant also contends that Dr. Mitchell, a witness produced by the plaintiff, was not the attending physician, but that his examination was made only for the purpose of qualifying as a witness. The doctor testified that he saw from the plate a spicule of bone, which he described as a periosteum fracture or tear; that it "may interfere with the body weight bearing surface of the affected foot." We agree with the defendant that the presence of the spicule bone was disputed. The defendant's witness, Dr. Zeitlin, after an examination of the plate, testified that there was no spicule of bone shown. This question was also passed upon by the jury in its finding for the plaintiff. Perhaps the jury believed that this doctor was mistaken when he testified that if he were to take a picture of the other foot it would likely show a bone such as appeared in the picture of the left foot. After the doctor testified, an X-ray was taken of the right foot. Dr. Mitchell was recalled and examined the plate and testified that there was no evidence of a spicule bone under the cuboid bone, and that the cuboid bone of the right foot was normal.

Other criticism is made of Dr. Mitchell's testimony. However we have examined the evidence as to his description of the foot, in which he said, on the question of permanency, that it "may interfere with the body weight bearing surface of the affected foot," and it is apparent that his answer left the question open for the jury to determine from the evidence whether

the fracture as described by the doctor affects the weight bearing surface of the injured foot.

It is contended that the court erred in refusing to receive in evidence a copy of the hospital record made at the time the plaintiff was treated in the Iroquois Hospital. The plaintiff replies that no evidence was offered as to the authenticity of the record nor as to when and by whom it was made. Upon this question the court did not err in its ruling. The only witness produced was the witness in charge of the records of the hospital. The record is silent as to the whereabouts of the doctor or the nurses who attended the plaintiff in this hospital, or in whose handwriting the entries were made. The hospital record was offered in evidence for the purpose of contradicting plaintiff's testimony as to how she fell at the time of the accident.

The final question concerns the giving by the court of plaintiff's instruction as to damages. The instruction is objected to on the ground that there is no evidence of permanent injury, and that the attending physician was not produced as a witness, although plaintiff was calling upon the attending physician. Other criticism is made of this instruction, but from our examination, we find as a part of the instruction the court instructed the jury that ''you may also consider whatever evidence there is, if any, as to whether any of such physical injuries, if any, are permanent,'' and we are of the opinion that the instruction was not prejudicial. The other objection to this instruction is without merit. Therefore the giving of the instruction was not reversible error.

For the reasons stated in this opinion the judgment is affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.