Orrie Branch, Appellee, v. James Woulfe, Appellant.

Gen. No. 40,507.

Opinion filed May 22, 1939. Rehearing denied June 6, 1939.

GEORGE M. CRANE and GRENVILLE BEARDSLEY, both of Chicago, for appellant.

WILLIAM H. TEMPLE, SIDNEY A. JONES, JR. and GEORGE A. BLAKEY, all of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against nine defendants, who were police officers of the city of Chicago, to recover damages for a claimed assault, as a result of which plaintiff suffered severe injuries. The court directed the jury to find six of the defendants not guilty; the case was submitted to the jury as to the other three and two were found not guilty; defendant Woulfe was found guilty, plaintiff's damages assessed at $1,200, and Woulfe appeals.

The record discloses that about midnight of March 10, 1936, plaintiff was being held up and robbed by two men at the mouth of an alley on 44th street between Wabash and Michigan avenues. At that time two police officers, Dawe and O'Connor, came by, announced they were police officers and immediately the robbers opened fire as did the officers. Officer Dawe was shot in the groin and fell to the pavement; plaintiff was shot in the leg twice; the two robbers ran down the alley pursued by O'Connor; they escaped at that time but were later apprehended and at the time of the trial of the instant case one of them was dead and the other in the penitentiary. Plaintiff left the scene of the shooting, went around the corner where he met two acquaintances, Hawkins and Coffer, who drove him in Hawkins' automobile to the 48th street police station, where an officer came out of the station and went with them to Provident hospital, where plaintiff's injuries were treated by Dr. Whitfield and Ruth Lincoln, a nurse; this was about 12:50 a. m.

The evidence further shows that other police officers notified of the shooting went to the scene and took officer Dawe to the Chicago hospital. About that time defendant Woulfe and other officers went to the Provident hospital and took plaintiff to the Chicago hospital to see if he could be identified by Dawe, the wounded officer. Dawe's wounds were being attended

to at that time at the hospital and when plaintiff was brought into his presence Dawe said he was one of the men who shot him; thereupon plaintiff was taken back to the Provident hospital for further treatment and later on, during the early morning hours, was taken to the Bridewell hospital and a charge placed against him. Some time later he was discharged by the municipal court.

The evidence as above stated is undisputed, but plaintiff testified that when he was taken to the Chicago hospital and identified by Dawe as the man who shot him, defendant Woulfe and others struck plaintiff, and that as he got outside the hospital he was again assaulted by officers Woulfe and Colander and his lower jaw bone was fractured on each side. When he was returned to Provident hospital, Dr. Whitfield and the nurse Ruth Lincoln testified, they found his jaw broken, but that they had noticed nothing wrong with his jaw when he was brought there the first time. A number of officers testified, as well as the doctor who was treating officer Dawe at the Chicago hospital, and denied that anyone had struck plaintiff at any time.

Defendant contends the verdict and judgment are against the manifest weight of the evidence and counsel go into great detail in analyzing and discussing it. We have considered the evidence and argument of counsel and are of opinion we are not warranted under the law in disturbing the verdict of the jury, approved by the judge, on the ground that it is against the manifest weight of the evidence. The jury and the trial judge saw and heard the witnesses testify and were in much better position to determine the truth of the matter in controversy than are we, sitting in a court of review.

Defendant further contends that since some of the counts of the complaint charged "major crimes, punishable by imprisonment in the penitentiary," and other counts charge offenses punishable by jail sen-

tences, plaintiff must prove beyond a reasonable doubt the allegations of his complaint. This is not the law. *People v. Small,* 319 Ill. 437; *Burgiel v. Aniol,* 218 Ill. App. 466.

In the latter case, a suit to recover damages for personal injuries for an assault, we discussed the authorities and reached the conclusion that in such a case plaintiff was required only to prove the allegations of his complaint by a preponderance of the evidence. Moreover, defendant is not in a position to urge the question here because, at his request, the court gave a number of instructions to the effect that plaintiff must prove his case by a preponderance or the greater weight of the evidence.

Complaint is also made that the court erred in excluding competent evidence offered by defendant and admitting incompetent evidence on behalf of plaintiff. The first point is that the court erred in excluding the record of the Bridewell hospital where plaintiff was a patient from March 11 to March 14, 1936. It is said the record was vital to defendant because (1) "It tended strongly to impeach plaintiff, because the bruise chart showed no other marks on plaintiff's body except a marked swelling on the left of the lower jaw and two other wounds on the right leg, thus indicating that he could not have been beaten as he swore he was"; and (2) that plaintiff testified he told the doctors at the Bridewell he was beaten by police but the record contained no such statement.

Dr. Andrew J. Toman, superintendent of the hospital, called by defendant, testified he was in charge of the hospital and of the records and that he attended to all the patients, that "I also do most of the surgery over there." He then described what is done when a person is brought in by the police and needs hospital treatment; he produced the hospital record and testified that it was written by Dr. Kreft and that the record was true and correct; that Dr. Kreft was

now practicing in Montana. A photostatic copy of the hospital record is in the record before us; much of it is typewritten; some of the entries purport to have been made by doctors other than Dr. Kreft. It is obvious that Dr. Toman did not know the purported facts stated in the record except by looking at it. We think the hospital record was properly excluded. *Wright v. Upson,* 303 Ill. 120; *Plewe v. Chicago Motor Coach Co.,* 283 Ill. App. 57.

In the *Wright* case a hospital record was admitted in evidence, which the court held was error and said (p. 144): "The admission of the entire record by the court was erroneous for the further reason that the hospital record was the product of two or more registered nurses, each nurse making entries only at the time and for the time during which she nursed the testatrix. Only one nurse, Miss Erickson, was called to testify as to the correctness of the entries made by her and as to the times they were entered. There is no such proof of the entries made by the other nurse or nurses, and there was no showing in the record that the other registered nurse or nurses were deceased or out of the jurisdiction of the court. If the hospital record is admissible at all it is for the same reason that books of account are admissible and the same character of proof is required, and all persons who make entries therein are required to testify to their correctness before they are admitted in evidence." In the instance case the hospital record purports to have been made by Dr. Tichy, Dr. Kreft, L. M. Marsh, Dr. Marazek, Kapernick and J. Hanson. None of these persons was called as a witness nor was any of them accounted for except Dr. Kreft. Moreover, the hospital record tends to show that there were numerous contusions on the head and scalp, two jaw bone fractures and many teeth loosened; and the only matter pointed out that could be considered of benefit to defendant was that there was no state-

ment that plaintiff had told anyone at the Bridewell he had been beaten by the police, although plaintiff testified he did tell the persons at the Bridewell hospital that the police had struck him. But whether, under the procedure or rules of the hospital, such a statement would have been shown in the hospital record does not appear.

The next objection is that the court, upon objection of plaintiff, excluded written reports made by officers Bush and O'Connor and defendant Woulfe to their superiors. These reports purported to give an account of what happened on the morning after the night in question. They were clearly inadmissible. Each of these witnesses testified on the trial. No contention was made that these statements were sought to be used in refreshing the recollection of the officers. In these circumstances obviously the officers could not, by a written report, corroborate their own testimony. The reports were clearly incompetent. *Koch v. Pearson*, 219 Ill. App. 468.

Another complaint is that the court erred in refusing to permit counsel for defendant to cross-examine plaintiff as to whether he was prejudiced against the police. Plaintiff testified on direct examination that he was working on a P.W.A. project at the time of his injury, and in addition to this he on cross-examination testified he was "placing policy" in the neighborhood, for which he was paid four or five dollars a week. Counsel then asked if he had had any trouble with the police on account of such work. We think the court erroneously sustained objection to this question. But plaintiff was not asked if he had been arrested. The facts in the case were not complicated but simple, and we think the error was not such as would warrant us in holding the judgment ought not to stand.

A further complaint is that two of the original defendants, officers Colander and Dawe, were called by plaintiff for cross-examination under section 60 of the

Civil Practice act, and the court refused to permit counsel for defendant to interrogate these witnesses at the conclusion of their cross-examination. The ruling was erroneous (*Combs v. Younge,* 281 Ill. App. 339) but these officers were later called and testified, and we hold the error was not prejudicially erroneous. We are also of opinion there was no serious error in the cross-examination of Dr. Conway, a witness called by defendant. Nor was there any prejudicial error in the conduct of the trial judge.

Defendant further contends the court erred in giving Instructions Nos. 2, 4, 5, 6, 7, 9 and 10 at plaintiff's request and refusing to give others requested by defendant.

By Instruction No. 2 the jury was told that in determining "the question of which side has the preponderance of the evidence" it might take into consideration the appearance and conduct of the witnesses; a number of other matters were then specified, but the element of the number of witnesses testifying was omitted. The instruction did not direct a verdict.

Instruction 4 told the jury that if it believed from the evidence any witness had knowingly and wilfully sworn falsely to any material issue, it was at liberty to disregard the entire testimony of such witness except in so far as it had been corroborated by other credible evidence, etc. The complaint is that the instruction left the jury to determine what the material issue was. This instruction was not erroneous. *United Breweries Co. v. O'Donnell,* 221 Ill. 334. Moreover, a refused instruction, requested by defendant, was similar in the respect complained of.

By Instruction 5 the jury was told the burden was upon plaintiff to prove his case as stated in his complaint, or any count thereof. It is contended the instruction was erroneous because it referred the jury to the complaint for it to determine what were the material issues; that the instruction was not limited

to Counts I to V but "authorized the jury to base its finding on Count VI as well. The learned trial Judge must have forgotten that Count VI had been dismissed. Moreover, Count V was in the language of the statute denouncing kidnapping," etc. Obviously, since Count VI was dismissed it was not in the case, and Count V makes no reference to kidnapping. We think there was no prejudicial error in giving this instruction, and the jury was in no way misled because the issue presented was simple and easily understood by the jury.

By Instructions 6 and 7 the jury was told the "evidence might be direct or circumstantial." The complaint is that the instructions were inapplicable because the evidence was direct and not circumstantial. While most of the evidence was direct there was some that might be properly designated circumstantial, in that Dr. Whitfield and the nurse, Ruth Lincoln, testified plaintiff did not appear to have any injury to his jaw when he was first at the hospital, but that when he returned after having been taken to the Chicago hospital his jaw bone was fractured.

By Instruction No. 9 the jury was told that "if several persons by concerted action do an unlawful act which results in an injury to another, all are alike guilty," and that he who is present and aids or abets another is responsible, etc. This instruction ought not to have been given, but we are unable to see how it could have prejudicially affected defendant. Instruction No. 10 was of a similar character and for the same reason we hold it was not prejudicially erroneous.

Complaint is made that the court should have given Instruction No. 2 tendered by defendant. By that instruction it was sought to have the jury told "that the preponderance or greater weight of the evidence does not necessarily depend on the number of witnesses testifying on either side; but in determining upon which side the preponderance of the evidence is,

the jury are authorized to consider not only the number of witnesses testifying . . . but also the relationship of the witnesses to the party, if any is proved, their motive, temper, feeling, or bias, if any has been shown,'' etc. Even if we assume the instruction was proper, we think, upon a consideration of the entire record, the refusal to give this instruction does not require a reversal of the judgment. As stated, we are clear the jury understood the issue, which was whether defendant had struck plaintiff both while in and outside of the Chicago hospital, and broken his jaw.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.