232

Ruth Allanson, Appellee, v. R. W. Frieder, Appellant.
Gen. No. 40,872.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940.

TURNER & TURNER, of Chicago, for appellant; MAURICE TURNER, of counsel.

KAMFNER & HALLIGAN, of Chicago, for appellee; EDWIN A. HALLIGAN and SAMUEL M. LANOFF, both of Chicago, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Defendant appeals from a judgment for $300 entered

upon the verdict of a jury in an action brought by plaintiff alleging that defendant promised, upon a sufficient consideration, to pay her the debt of the Pyratone Products Corporation, of which he was a stockholder, director and officer.

Defendant first argues that the verdict of the jury finding with plaintiff on the question of defendant's promise to pay, is against the weight of the evidence. It is axiomatic that where the jury and trial judge saw and heard the witnesses testify, they are in a much better position to judge the truth of the matter in controversy than are we, sitting in a court of review. *Branch v. Woulfe*, 300 Ill. App. 472, and many other cases.

Plaintiff says the evidence supports her claim that defendant personally agreed to pay to her a debt in the sum of $1,000 due and owing from the Pyratone company, in consideration of plaintiff refraining from filing a bill for the appointment of a receiver for the Pyratone company, and also from enjoining a chattel mortgage foreclosure by the First United Finance Corporation, of which defendant was also an officer, director and stockholder.

Plaintiff testified that on May 7, 1934, the Pyratone company was indebted to the Midwest Specialties Corporation and executed and delivered to the Midwest company its five notes, totaling $2,250; the Midwest company was indebted to plaintiff, and to pay this, assigned these notes to her; at the time of this assignment there was a balance due on the notes of $1,250; the Pyratone company thereafter made payments to plaintiff on these notes, leaving a balance due on July 12, 1935, in the sum of $1,000. On this day default in payment was made and in the early part of July plaintiff had several conversations with defendant about the payment due; July 28, she learned that the First United Finance Corporation had foreclosed its chattel mortgage on the assets of the Pyratone company and sale

was advertised to be held August 1, 1935; July 29, 1935, she called upon defendant at his office, accompanied by Michael T. Daly, who had been, in 1933 and 1934, president of the Midwest Specialties Corporation; she told defendant she had been advised by her attorney that if the foreclosure proceeding continued she would be squeezed out and that to prevent this she was going to have a receiver of the Pyratone company appointed; that defendant told her ''not to get excited and that he would take care of that obligation personally and pay me $125 per month, but in August pay $50 and begin in September with $125 and pay until $1,000 was paid.'' Plaintiff refrained from taking action and the foreclosure sale was held. She later inquired of defendant, asking for her payment, and was told by him ''The thing was over.'' She received no part of the $1,000.

Daly testified that he was present in the office of defendant in July 1929, and in answer to the inquiry by plaintiff as to what the Pyratone company would do about her notes, was told by defendant that ''If you don't throw the Pyratone company into receivership I will pay.''

Documentary evidence was introduced showing the notice of the chattel mortgage foreclosure, a report of the sale, the notes executed by Pyratone to the Midwest company and an agreement dated January 16, 1935, wherein the Pyratone company agreed to pay plaintiff in monthly instalments the amounts of its notes held by her which she had received from the Midwest company.

Defendant testified in his own behalf admitting the execution of the chattel mortgage by the Pyratone company to the First United Finance Corporation; that he could not remember what was said by plaintiff at these interviews with him except that she asked for money; that she talked with him several times about getting her money and was the most persistent creditor of the Pyratone company. The witness did not recall that

plaintiff had said anything about appointing a receiver for Pyratone. From this evidence the jury was justified in concluding that defendant had promised to pay plaintiff as she had testified. Certainly it cannot be said that this conclusion is against the manifest weight of the evidence.

Defendant next says that forebearance by plaintiff was not good consideration unless she had a reasonable belief that a bill for a receiver would be sustained and the foreclosure of the chattel mortgage could be enjoined. The law is that a waiver by a creditor of his right to have a receiver appointed for a corporation is a sufficient consideration for the promise of an officer, director and stockholder of a corporation to pay the debt of the corporation to the creditor. Ch. 32, sec. 86, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 32.088] provides that where a claim is admitted by the corporation and it is unable to pay its debts, courts of equity have full power to liquidate the assets and business, and section 87 provides that to do this the court has all the ordinary powers of a court of equity to appoint a receiver and take such other proceedings as may be requisite to preserve the corporation assets.

That plaintiff had a claim of $1,000 against the Pyratone company is not disputed. The record also shows that the Pyratone company was unable to pay its debts. Defendant himself testified that he resigned as an officer of the Pyratone company ''because it would require a great deal more money to put into to satisfy those other creditors''; that the company was indebted in the sum of $20,000; the landlord was threatening to evict for nonpayment of rent, and in the latter part of August 1935, the Pyratone company did go into bankruptcy.

*In re Estate of Swift,* 267 Ill. App. 224 (certiorari denied by the Supreme Court) supports the proposition that the agreement of plaintiff to refrain from instituting suit for the appointment of a receiver and for injunctive relief constitutes sufficient consideration for

defendant to assume the payment of the debt. In the *Swift* case Joseph A. Swift owed his brother a considerable sum of money, and while so indebted conveyed certain real estate to his wife Katherine; shortly thereafter Joseph died; the brother (claimant) notified Katherine that he was about to take action to have the real estate transferred to her set aside as a fraud upon his rights as a creditor; Katherine thereupon agreed to pay him the amount of his claim if he would refrain from disturbing her position; this offer was accepted and she made payments to him in accordance with the agreement until she died, leaving a balance due; claim for this was filed in the probate court; it was there allowed; on appeal to the circuit court this was affirmed, and in the appeal to the Appellate Court the point was made that the agreement was without consideration; the opinion in that case considered and distinguished all of the cases cited by the instant defendant in support of this contention and sustained the circuit court in allowing the claim. In *Meyer v. Pfahler,* 362 Ill. 336, 345, the question was presented whether stockholders or persons financially interested in banks may be held liable for notes made to the bank for the purpose of aiding the bank in its financial difficulties. It was claimed that such notes were not based on a valid consideration, but the Supreme Court overruled this contention, holding that all the signers were interested in maintaining the value of their bank stock, and this constituted a valid consideration. See also *Dougherty v. Duckels,* 303 Ill. 490, 500. In the instant case defendant was interested, as a stockholder, officer and director, in preventing the receivership of the Pyratone company and also was interested in removing any obstacle to the foreclosure proceedings of the First United Finance Corporation, of which he also was stockholder, director and officer.

Defendant complains the court erred in excluding oral testimony that there were a number of mortgages held by the First United Finance Corporation against the

Pyratone company. The record shows only one chattel mortgage, and defendant failed to produce on the trial any other mortgages. As was said in *New Staunton Coal Co. v. Industrial Commission*, 304 Ill. 613, 616, oral testimony as to contents of a document is not admissible, as the original was not shown to have been lost or not available as evidence.

We see no reason for disturbing the judgment of the trial court, and it is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.